> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 12, 2015[*]
Decided August 14, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2094

| | |
|---|---|
| APRIL DAWN JONES, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:11-cv-1034-TWP-DML |
| LUMAR GRIGGS, | |
| *Respondent-Appellee*. | Tanya Walton Pratt, *Judge*. |

---

[*] After examining the briefs and the records, we have concluded that these cases are appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

No. 15-1823

EARL KEY,
      *Plaintiff-Appellant*,

      *v.*

INDIANA UNIVERSITY HEALTH
BLOOMINGTON HOSPITAL, et al.,
      *Defendants-Appellees*.

Appeal from the United States District
Court for the Southern District of Indiana,
Indianapolis Division

No. 1:14-cv-1007-JMS-TAB

Jane E. Magnus-Stinson,
*Judge*.

**O R D E R**

In these two appeals (which we consolidate for disposition), Earl Key seeks to litigate claims on behalf of April Jones, who suffers from early-onset Huntington's disease and was adjudicated incompetent by state and federal courts. (Huntington's disease is a neurological disorder that, as a result of brain-cell deterioration, causes uncontrollable bodily movements and a decline in cognitive abilities.) In the first suit (No. 12-2094), Key, purporting to act as Jones's "next-friend," sued Lumar Griggs, Jones's state-appointed permanent guardian, to challenge state-court orders finding that she is legally incapacitated and appointing Griggs as her guardian. In his second suit (No. 15-1823), Key sued an array of public and private actors who are involved with Jones's care. We affirm the dismissals of both lawsuits.

We begin with a brief history of the first suit. Purporting to sue on Jones's behalf, Key petitioned for a federal writ of habeas corpus, seeking Jones's emancipation from Griggs. The district court construed the suit as a challenge to Jones's guardianship and denied relief, concluding that the court lacked subject-matter jurisdiction under the domestic-relations exception to federal jurisdiction. When the appeal first came before us, we questioned whether Key could litigate on behalf of Jones. We recruited counsel for Jones and Key to brief that question (along with other questions). Counsel for Jones then requested and received from us a limited remand for the district court to address Jones's competency and to determine whether a guardian ad litem for Jones should be appointed. The district court held a two-day competency hearing (which Jones was physically unable to attend), received evidence from a psychiatrist who evaluated Jones, conducted an in-camera proceeding at Jones's nursing home, and considered the records from Jones's state proceedings. Like the state court, the district court concluded that Jones lacked the capacity to make legal decisions on her own behalf and the court found that a guardian ad litem should be appointed for Jones. The court did not take

that final step because it fell outside the scope of the limited remand. But it noted that Griggs was willing to serve that role and that neither party had identified another "viable candidate."

The case has now returned to us, where we must decide whether Key can sue on Jones's behalf. Counsel for both Jones and Key have moved to withdraw. Jones's attorney asserted that, because no representative had been appointed to make legal decisions for Jones, he did not have a competent client to represent. We granted that motion. Key's attorney also moved to withdraw, citing an irreconcilable breakdown in communications with Key. We granted that motion, too, but recruited another attorney for Key. When months later that new attorney asked to withdraw for the same reason, we released the attorney and ordered Key to show cause why he has standing to pursue this appeal on behalf of Jones. He has failed to make a persuasive case.

Key asserts that he may act as Jones's next friend because he has a significant relationship with her, thus satisfying a requirement for acting as next friend. *See Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990); *T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997). But even if we assume that Key—who is Jones's ex-stepfather— meets the "substantial relationship" requirement to act as next friend, he is not a lawyer and thus cannot represent Jones as next friend without counsel. *See* 28 U.S.C. § 1654; FED. R. CIV. P. 17(c); *Elustra v. Mineo*, 595 F.3d 699, 705–06 (7th Cir. 2010) (explaining rule prohibiting next friend from litigating pro se on behalf of another); *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) (forbidding non-lawyer parent from suing without counsel on behalf of child); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830–31 (7th Cir. 1986) (barring lay advocates). At the outset of this appeal almost three years ago, we twice warned Key that he needed counsel if he wanted to litigate as a next friend. He then squandered the chance to proceed with either of the two attorneys we recruited for him. Because he remains uncounseled, we therefore dismiss Appeal No. 12-2094.

That brings us to Appeal No. 15-1823, where most of Key's claims fail for similar reasons. Key brought 25 claims against 13 defendants, principally alleging that the defendants unlawfully interfered with his ability to protect Jones's legal interests. The district court dismissed his claims largely for lack of standing and failure to state a claim for relief. As discussed above and observed by the district court, as a non-lawyer Key *cannot* litigate claims on behalf of Jones. So we address only those claims that allege harm to Key personally.

Key generally alleges that, by caring for Jones, the defendants have interfered with his constitutional right to associate freely with her. The Constitution prohibits the government from barring one's right to "enter into and maintain certain intimate human relationships." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984). Protected relationships are limited to "those that attend the creation and sustenance of a family." *Id.* at 619. Even if we assume that Key's and Jones's relationship fits that description, Key appears to object only to his inability to make decisions for Jones; he does not plausibly allege that the defendants have prevented him from maintaining his own relationship with her. The district court correctly concluded that Key failed to state a claim for relief.

Key also presses a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, alleging that the defendants engaged in a pattern of fraudulent conduct, including attempts to intimidate him and to interfere with his proceedings in federal court. But to maintain a civil RICO claim, Key must allege an injury to his business or property. *See* 18 U.S.C. § 1964(c); *Fiala v. B & B Enters.*, 738 F.3d 847, 850 (7th Cir. 2013). He has not and thus fails to state a claim for relief.

Lastly, we address Key's state-law claims for negligent infliction of emotional distress and invasion of privacy. Key alleges that he suffered extreme emotional distress after visiting Jones at her nursing home and observing that, at some time during his absence, Jones had suffered "horrendous injuries" as a result of neglect and drugging allegedly at Griggs's direction. And when he visited Jones, Key adds, employees at the nursing home insisted on remaining in the room, thereby, he contends, invading his privacy.

Indiana provides relief for negligent infliction of emotional distress under two theories: the modified-impact rule and the bystander rule. *Johnson ex. rel. Ind. Dep't of Child Servs. v. Marion County Coroner's Office*, 971 N.E.2d 151, 159–60 (Ind. Ct. App. 2012). Key fails to state a claim for relief under either theory. Key cannot succeed under the modified-impact rule because he has not alleged or argued on appeal that he was "present at the scene of the injury-producing event" from which he was "directly impacted in a physical manner." *Perkins v. Stesiak*, 968 N.E.2d 319, 322 (Ind. Ct. App. 2012). The bystander rule, on the other hand, allows a plaintiff to recover if he "actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise [tortious] conduct." *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000). But even if we assume that

Key's relationship with Jones meets the relationship standard, Key has not alleged or suggested on appeal that he visited Jones at or "soon after" the moment of any alleged tortious conduct. *See Smith v. Toney*, 862 N.E.2d 656, 663 (Ind. 2007). Key has therefore not alleged a claim for relief under either theory.

As for invasion of privacy, Indiana recognizes four injuries that may be alleged, the only one relevant here being intrusion upon seclusion. *See J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 19 N.E.3d 811, 815 (Ind. Ct. App. 2014). But this tort is actionable only if there is an intrusion into the plaintiff's private physical space, like his home or body. *See Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991); *Curry v. Whitaker*, 943 N.E.2d 354, 358 (Ind. Ct. App. 2011). Key's inability to visit Jones alone without supervision at *her* nursing home does not meet that standard.

Accordingly, we AFFIRM the judgments in Appeals Nos. 12-2094 and 15-1823. We also DENY Key's motion to intervene in Appeal No. 12-2094.